UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

D.J. ARELLANO,

          Plaintiff,

     v.                                    Civil No. 09-90-HA

                                                OPINION AND ORDER

MICHAEL J. ASTRUE,
Commissioner of Social Security,

          Defendant.
_____

HAGGERTY, District Judge:

      Plaintiff D.J. Arellano seeks judicial review of a final decision by the Commissioner of

the Social Security Administration denying his application for Disability Insurance Benefits

(DIB) and Supplemental Security Income (SSI).  This court has jurisdiction to review the

Commissioner's decision under 42 U.S.C. § 405(g).  For the following reasons, the

Commissioner's decision is reversed and remanded for further proceedings.

1- OPINION AND ORDER

## STANDARDS

To establish eligibility for benefits, a plaintiff has the burden of proving an inability to engage in any substantial gainful activity (SGA) "by reason of any medically determinable physical or mental impairment" that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). Additionally, for the purposes of DIB, a plaintiff has the burden of proving disability prior to the termination of his or her insured status. *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for benefits. 20 C.F.R. §§ 404.1520, 416.920.

First, the Commissioner determines whether the claimant is engaged in SGA. If the claimant is so engaged, disability benefits are denied.

If not, the Commissioner proceeds to the second step and determines whether the claimant has a medical impairment that meets the regulatory definition of "severe." 20 C.F.R. § 404.1520(a). If the claimant lacks this kind of impairment, disability benefits are denied. 20 C.F.R. § 404.1520(c).

If at least some of the claimant's impairments are severe, the Commissioner proceeds to the third step to determine whether the impairment or impairments are equivalent to one or more impairments that the Commissioner has recognized to be so severe that they are presumed to preclude SGA. *See* 20 C.F.R. § 404.1520(d). These are listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments or the Listings). The Listings describe impairments which qualify as severe enough to be construed as *per se* disabling. 20 C.F.R. §§ 404.1525, 416.925; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).

2- OPINION AND ORDER

The claimant has the burden of producing medical evidence that establishes all of the requisite medical findings for a listed impairment. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005); *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). If the claimant's condition meets or equals one in the Listing of Impairments, the claimant is presumed conclusively to be disabled.

If the impairment is not one that is presumed to be disabling, the Commissioner determines the claimant's residual functional capacity (RFC), which is the most an individual can do in a work setting despite the total limiting effects of all his or her impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), and Social Security Ruling (SSR) 96-8p.

The Commissioner then proceeds to the fourth step to determine whether the impairment prevents the claimant from engaging in work that the claimant has performed in the past. If the claimant is able to perform his or her former work, a finding of "not disabled" is made and disability benefits are denied. *See* 20 C.F.R. § 404.1520(e).

If the claimant is unable to perform work that he or she has performed in the past, the Commissioner proceeds to the fifth and final step and determines if the claimant can perform other work in the national economy in light of his or her RFC, age, education, and work experience.

In this five-step framework used by the Commissioner, the claimant has the burden of proof at steps one through four. Accordingly, the claimant bears the initial burden of establishing his or her disability.

At the fifth step, however, the burden shifts to the Commissioner to show there are a significant number of jobs in the national economy that the claimant can perform given his or her RFC, age, education, and work experience. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996).

3- OPINION AND ORDER

If the Commissioner cannot meet this burden, the claimant is considered disabled for purposes of awarding benefits under the Act. 20 C.F.R. § 404.1520(f)(1). If the Commissioner meets this burden, the claimant is deemed not disabled for purposes of determining benefits eligibility. 20 C.F.R. §§ 404.1566, 404.1520(g).

The Commissioner's decision must be affirmed if it is based on proper legal standards and its findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett*, 180 F.3d at 1097; *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence is more than a scintilla but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (citation omitted). The Commissioner's denial of benefits is upheld even if the evidence is susceptible to more than one rational interpretation, so long as one of the interpretations supports the decision of the Administrative Law Judge (ALJ). *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002); *Andrews*, 53 F.3d at 1039-40.

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Tackett*, 180 F.3d at 1098. The Commissioner, not the reviewing court, must resolve conflicts in the evidence, and the Commissioner's decision must be upheld in instances where the evidence supports either outcome. *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003); *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1998).

However, a decision supported by substantial evidence must be set aside if the Commissioner did not apply the proper legal standards in weighing the evidence and making the decision. *Reddick*, 157 F.3d at 720.

4- OPINION AND ORDER

## FACTS

The relevant facts, which are drawn from the administrative record and the ALJ's decision, are summarized here.  Plaintiff was previously awarded benefits with a disability onset date of January 28, 2000.  However, in 2003, plaintiff's benefits were terminated due to medical improvement.  Thereafter plaintiff filed the current application for benefits, again alleging disability beginning January 28, 2000.

Plaintiff was nineteen years old at the alleged disability onset date.  Plaintiff has a tenth grade education and has work experience as a production assembler, grocery clerk, metal fabricator, and parking lot attendant, although none of his prior jobs constitute past relevant work.

Plaintiff protectively filed the instant application for benefits on May 4, 2004.  Plaintiff alleges disability stemming from mental impairments including: bipolar disorder, intermittent explosive disorder, and attention deficit disorder.  Plaintiff's application was denied initially and on reconsideration.

An ALJ conducted a hearing on November 27, 2006 at which he heard testimony from plaintiff, who was represented by counsel; plaintiff's mother; and a vocational expert (VE).  On March 23, 2007 the ALJ issued a decision finding plaintiff not disabled as defined in the Social Security Act.  The Appeals Council declined plaintiff's request for administrative review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. Plaintiff subsequently initiated this action.

## SUMMARY OF ALJ'S FINDINGS

At step one, the ALJ found that plaintiff had not engaged in SGA since his alleged

disability onset date.  Tr. 27, Finding 2.[1]

At step two, the ALJ found that plaintiff has the following medically determinable severe

impairment: bipolar disorder.  Tr. 27, Finding 3.

At step three, the ALJ found that plaintiff does not have an impairment, or combination

of impairments, that meets or equals the requirements of any listed impairment.  Tr. 28, Finding

4.

The ALJ determined that plaintiff has the RFC to perform simple repetitive tasks with

only occasional public contact.  Tr. 28, Finding 5.

At step four, the ALJ found that plaintiff has no past relevant work.  Tr. 31, Finding 6.

At step five, the ALJ, found that jobs exist in significant numbers in the national

economy that plaintiff could perform.  Tr. 31, Finding 10.

## **DISCUSSION**

Plaintiff contends that this court should reverse and remand the Commissioner's final

decision for an award of benefits or for further proceedings due to a number of alleged errors

including: (1) failing to give controlling weight to the treating physician's opinion, (2) failing to

find plaintiff's intermittent explosive disorder and attention deficit disorder to be severe, (3)

improperly rejecting plaintiff's subjective symptom testimony, and (4) improperly rejecting lay

witness testimony.

### 1.      **Physician's Opinion**

Plaintiff argues that the ALJ improperly rejected the opinions of treating psychiatrist Dr.

Stuart Oken.  Doctor Oken gave his opinion regarding plaintiff's impairments a number of times.

---

[1] Tr. refers to the Transcript of the Administrative Record.

On March 20, 2003, Dr. Oken opined that plaintiff's "well documented Bipolar Rapid Cycling mood disorder, Intermittent Explosive Disorder, and Attention Deficit Disorder . . . have in the past required hospitalization and prevented [plaintiff] from maintaining any sustained school or work." Tr. 417.  Doctor Oken further stated that plaintiff would not be able to work without vocational rehabilitation and a specific placement to accommodate his impairments.  *Id.*  On July 24, 2003, Doctor Oken stated that "up until this point [plaintiff] has not been able to remain with a job due to all his psychiatric problems," but that he might be able to sustain employment with the aid of vocational rehabilitation.  Tr. 406.  On November 27, 2006, at plaintiff's request, Dr. Oken wrote a letter intended to help plaintiff obtain health coverage under his parents' insurance plan.  Tr. 1080.  Doctor Oken wrote that due to the combination of plaintiff's illnesses, "[i]t has been difficult to sustain any gainful and consistent employment," and that plaintiff's difficulties have "necessitated [plaintiff] remaining in [his] parents' household and under their care and financial support."  *Id*.  Doctor Oken further opined that plaintiff's disability "has not allowed [plaintiff] to become financially independent."  *Id*.  Doctor Oken formulated these opinions despite his conclusion that plaintiff had seen marked improvement since his initial problems with his psychiatric disorders.  *See e.g.*, Tr. 345-46, and 394.

The ALJ referenced several portions of Dr. Oken's records, but only explicitly addressed his most recent disability opinion.  The ALJ rejected Dr. Oken's most recent opinion because the "letter appears to have been written with the intent of helping the claimant to gain medical insurance through his parents" and because "[t]reatment records reveal that the claimant's mental illness has responded well to treatment."  Tr. 30.  The ALJ failed to address Dr. Oken's prior opinions concerning plaintiff's ability to sustain employment.

The opinion of an examining physician cannot be lightly disregarded.  However, such

7- OPINION AND ORDER

opinions are "not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989)).  The ALJ may reject the contradicted opinion of a treating or examining physician by stating specific and legitimate reasons, and may reject an uncontradicted treating or examining physician opinion by providing clear and convincing reasons, supported by substantial evidence in the record.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *see also Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1995) (ALJ must provide clear and convincing reasons for rejecting uncontroverted expert opinions, and must provide specific, legitimate reasons for rejecting controverted expert opinions).  An ALJ must give weight not only to the physician's clinical findings and interpretation of test results, but also to their subjective judgments.  *Lester*, 81 F.3d at 832-33 (citation omitted).

Here, Dr. Oken's opinion was controverted by other medical experts.  Accordingly, the ALJ was required to provide specific legitimate reasons for rejecting his opinion.  The first reason provided for rejecting Dr. Oken's opinion, that it was given to help plaintiff, was illegitimate.  "The purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them."  *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995).  Moreover, this reason for rejecting Dr. Oken's opinion is also deficient because it is inapplicable to Dr. Oken's prior statements and fails to acknowledge the longitudinal consistency of his opinions.

The ALJ's second reason for rejecting Dr. Oken's opinion, that plaintiff had responded well to treatment, is also of suspect legitimacy.  The ALJ noted that plaintiff "was doing well with medication," and that Dr. Oken adjusted plaintiff's medications when he began exhibiting hypomania, then adjusted his medications again when plaintiff began to experience symptoms of

8- OPINION AND ORDER

depression, and concludes that plaintiff's "symptoms again improved." Tr. 29.  The ALJ may

have misapprehended the nature of plaintiff's improvement.  The ALJ cites the same treatment

note showing some improvement twice for the proposition that plaintiff had responded well to

treatment. The ALJ cited Tr. 394 and 693 separately as showing two discrete instances of

improvement.  However, these citations both refer to Dr. Oken's treatment notes from November

5, 2003.

### 2.    Severity of Impairments

Plaintiff argues that the ALJ erred in finding plaintiff's intermittent explosive disorder

and attention deficit disorder to be non-severe.  "An impairment or combination of impairments

may be found 'not severe *only* if the evidence establishes a slight abnormality that has no more

than a minimal effect on an individual's ability to work.'"  *Webb v. Barnhart*, 433 F.3d 683, 687

(9th Cir. 2005) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)).  An ALJ must

have "substantial evidence to find that the medical evidence clearly establishe[s]" that an

impairment is not severe.  *Id*.

The ALJ's determination that plaintiff's intermittent explosive disorder and attention

deficit disorder are non-severe is unsubstantiated.  The ALJ also failed to make explicit severity

findings.

The ALJ stated that psychologist Dr. Joe Wood noted a diagnosis of a mood disorder and

intermittent explosive disorder, but the doctor "did not note what, if any, limitations these

conditions would cause." Tr. 30.  The ALJ gave "great weight to this assessment."  *Id*.  With

respect to the intermittent explosive disorder however, it appears Dr. Wood accepted plaintiff's

statement that his disorder is triggered two to three times per month by stress and that when it is

triggered, plaintiff can "'blow up, punch a wall . . . hurt people.'"  Tr. 361.  It is unclear why the

9- OPINION AND ORDER

ALJ did not consider plaintiff's proclivity for blowing up in the face of stress to be a limitation on his ability to work. Indeed, it appears that at a number of his failed job attempts, plaintiff lost his temper as a result of his intermittent explosive disorder. During one work attempt he lost his temper and punched walls, resulting in his being sent home, and at another he threw a set of keys at his supervisor. Tr. 1126-27. The ALJ also failed to adequately address whether plaintiff's attention deficit disorder is severe. Because proper consideration of plaintiff's intermittent explosive disorder, and possibly his attention deficit disorder, could result in a different RFC, the ALJ's error was not harmless.

### 3.    Lay Witness Testimony and Subjective Symptom Testimony

Plaintiff asserts that the ALJ erred in evaluating the lay testimony presented by plaintiff's mother and the subjective symptom testimony given by plaintiff.

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account" unless the ALJ "expressly determines to disregard such testimony and give reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). An ALJ must offer "arguably germane reasons for dismissing" lay testimony, but need not "clearly link his determination to those reasons." *Id*. at 512.

In evaluating a plaintiff's subjective symptom testimony, the ALJ must determine whether the claimant has produced objective medical evidence of an underlying impairment that could reasonably be expected to produce the alleged symptoms. 20 C.F.R. § 404.1529(a); *Smolen v. Chater*, 80 F.3d 1273,1281-82 (9th Cir. 1996) (citation and quotation omitted). An ALJ may consider medical evidence as a relevant factor in determining a claimant's credibility. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

The Ninth Circuit set out a threshold test in *Cotton v. Bowen* to assist the ALJ in deciding

10- OPINION AND ORDER

whether to accept a claimant's subjective symptom testimony.  799 F.2d 1403 (9th Cir. 1986); *see also Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991).  If the claimant produces evidence that meets the *Cotton* test, and there is no evidence of malingering, then the ALJ can reject the claimant's testimony about the severity of symptoms only after offering specific, clear and convincing reasons for doing so.  *See Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

Under the *Cotton* test, a claimant who alleges disability based on subjective symptoms must meet two tests.  First, the claimant "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged. . . .'"  *Bunnell*, 947 F.2d at 342; (quoting 42 U.S.C. § 423(d)(5)(A) (1988)); *see also Cotton*, 799 F.2d at 1407.  Second, he or she must show that the impairment or combination of impairments could reasonably be expected to produce some degree of the alleged symptoms.

Here, the ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to produce some of the alleged symptoms, but that the claimant's and his mother's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible." Tr. 29.  Because the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptom, the ALJ was required to provide clear and convincing reasons for rejecting his subjective symptom testimony. *Dodrill*, 12 F.3d at 918.

The ALJ failed to properly reject the testimony of either plaintiff or his mother.  The ALJ discounted their statements because he found the medical records established that "the claimant's functioning is quite good, on the whole." Tr. 29.  The ALJ then discussed the alleged improvement plaintiff experienced in response to medications described above.  Because this

11- OPINION AND ORDER

court finds the ALJ possibly gave undue weight to the same medical records, his rejection of plaintiff's and his mother's testimony was neither germane, nor clear and convincing.

**4.    Remand**

A remand for further proceedings is unnecessary if the record is fully developed, and it is clear from the record that the ALJ would be required to award benefits. *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). The decision whether to remand for further proceedings turns upon the likely utility of such proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). In this matter, this court concludes that outstanding issues remain that must be resolved before a determination of disability can be made.

Upon remand, the ALJ shall reconsider Dr. Oken's medical records, addressing Dr. Oken's concerns about plaintiff's ability to work notwithstanding plaintiff's marked improvements. The ALJ shall reconsider the severity of plaintiff's intermittent explosive disorder and attention deficit disorder and shall make adjustments to his RFC accordingly. Additionally, the ALJ shall consult with a VE regarding plaintiff's newly established RFC. Plaintiff shall also have the opportunity to submit new evidence regarding his alleged impairments.

/ / / /

12- OPINION AND ORDER

**CONCLUSION**

For the reasons provided, this court concludes that pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner denying D.J. Arellano's application for DIB and SSI must be REVERSED and REMANDED FOR FURTHER PROCEEDINGS consistent with this ruling and the parameters provided herein.

IT IS SO ORDERED.

DATED this __8__ day of March, 2010.

_____/s/ Ancer L. Haggerty_____
Ancer L. Haggerty
United States District Judge